Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Peter K. Chu (SBN 251705)
pchu@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
Elizabeth Haviland

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH HAVILAND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROKT US CORP., a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>Defendant. | Case No. 2:26-cv-00582-DJC-AC<br>Hon. Daniel J. Calabretta<br>Courtroom: 7<br>Action filed on February 25, 2026<br><br>**PLAINTIFF ELIZABETH HAVILAND'S OPPOSITION TO DEFENDANT'S MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**EVIDENTIARY OBJECTION and DECLARATION OF PETER K. CHU** *filed concurrently herewith*<br><br>Date: August 13, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... 4

MEMORANDUM OF POINTS AND AUTHORITIES ..... 7

I. INTRODUCTION ..... 7

II. STATEMENT OF RELEVANT FACTS ..... 8

A. Plaintiff Alleges That Defendant Violated CIPA, Section 638.51 ..... 9

1. Defendant partnered with the Data Brokers to deanonymize identifying data from the Website visitors ..... 9

2. The DBSDKs are a "trap and trace" device ..... 9

3. Plaintiff suffered concrete injury from Defendant's conduct ..... 10

4. Defendant leverages the technology sector in San Francisco for its AI-driven project "Rokt Catalog" ..... 10

B. The *Variety* Appeal, Still in Briefing Phase, Is Irrelevant ..... 11

III. THIS COURT SHOULD DENY DEFENDANT'S STAY MOTION AS DEFENDANT CANNOT MEET THE REQUISITE HIGH BURDEN ..... 12

A. Defendant Seeks an Indefinite Stay, Which Mitigates against a Stay ..... 13

B. The Granting of the Stay Will Cause Damages to Plaintiff ..... 14

C. Defendant Cannot Show a Clear Case of Hardship or Inequity ..... 15

D. Judicial Efficiency Factor Does Not Favor Stay, Especially As the Issues in the Variety Appeal Are Not Determinative of This Action ..... 15

IV. RULE 12(b)(2) MOTION MUST BE DENIED BECAUSE DEFENDANT "PURPOSEDLY DIRECTED" ITS BUSINESS ACTIVITIES TO CALIFORNIA ..... 16

A. *Briskin* Eliminates a Requirement for "Forum Specific Focus" ..... 17

B. Plaintiff Pled Facts to Satisfy the Calder Effects Test ..... 18

1. Defendant expressly aimed its activities at California ..... 18

2. Plaintiff met the first and third requirements ..... 19

C. Plaintiff's Section 638.51 Claim "Arises from or Relates to" Defendant's California Activities ..... 19

D. Exercising Personal Jurisdiction over Defendant Comports with Substantial Justice and Fair Play ..... 20

V. PLAINTIFF SUFFERED A CONCRETE AND PARTICULARIZED INJURY-IN-FACT FOR ARTICLE III STANDING TO DEFEAT RULE 12(b)(1) MOTION ........ 21

A. The CIPA Provides Substantive Right, Right of Privacy ........ 23

B. Plaintiff Alleges Defendant Violated Plaintiff's Privacy under section 638.5 – a Concrete and Particularized Injury-In-Fact ........ 24

C. *Popa* Does Not Divest Plaintiff of Article III Standing ........ 24

VI. THIS COURT SHOULD DENY PLAINTIFF'S 12(b)(6) MOTION AS THE COMPLAINT SUFFICIENTLY STATES DEFENDANT VIOLATED THE CIPA ........ 26

A. Statutory Framework for Penal Code, § 638.51 ........ 26

B. The DBSDKs are a Trap and Trace Device ........ 27

C. The SAC Sufficiently Allege a Violation of the Section 638.51 ........ 27

1. Defendant Installed DBSDKs – a Prohibited Device ........ 27

2. The DBSDKs are a "Process" to capture electronic impulses ........ 27

3. The DBSDKs collect data and "Signaling Information" to Identify Anonymous Website Visitors ........ 27

D. The Statute Is Not Limited Solely to Telephones ........ 28

E. "Communication" Does Not Require "Content." ........ 29

F. Defendant's Plea for the Rule of Lenity Also Should Be Rejected ........ 30

VII. CONCLUSION ........ 31

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....26

*Balistreri v. Pacifica Police Dept*., 901 F.2d 696 (9th Cir. 1988)....26

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995)....19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....26

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010)....17

*Brinkley v. Monterey Fin. Servs., LLC,* No. 16-cv-1103, 2020 WL 1929023 (S.D. Cal. Apr. 21, 2020)....15

*Briskin v. Shopify, Inc.* (9th Cir. 2025) 135 F.4th 739 (*en banc*)....7, 16, 17, 18

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023)....23

*Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2023)....22

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016)....26

*Campbell v. Allied Van Lines, Inc.*, 410 F. 3d 618 (9th Cir. 2005)....28

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020)....22

*Camplisson v. Adidas Am., Inc.* (S.D.Cal. 2025) 809 F. Supp. 3d 1095....22, 25

*Clinton v. Jones*, 520 U.S. 681 (1997)....12

*Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....23, 24

*Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.),* 956 F.3d 589 (9th Cir. 2020)....8, 23, 24, 25

*Deivaprakash II,* 2025 U.S. Dist. LEXIS 193968, 2025 WL 2779193....26

*Dellasala v. Samba TV, Inc.* (N.D.Cal. Oct. 30, 2025, No. 3:25-cv-03470-JSC) 2025 U.S.Dist.LEXIS 214580....24

*DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655 (9th Cir. 1992)....31

*Eichenberger v. ESPN, Inc.,* 876 F.3d 979 (9th Cir. 2017)....22, 23

*Erceg v. LendingClub Corp*, 475 F.Supp.3d 1071 (N.D. Cal. 2020)....15

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022)....26

*Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012)....17

*First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438 (C.D. Cal. Feb. 14, 2025)....17

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S.* 351 ....18, 19, 20

*Fregosa v. Mashable, Inc.* (N.D.Cal. Oct. 9, 2025, No. 25-cv-01094-CRB) 2025 U.S.Dist.LEXIS 200770....30

*Gabrielli v. Haleon US Inc.,* No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ....25

*Garon v. Keleops USA, Inc.* (N.D.Cal. Sep. 2, 2025, No. 25-cv-02124-DMR) 2025 U.S.Dist.LEXIS 170745....31

*Gilligan v. Experian Data Corp*., No. 25-CV-02873-RFL, 2026 U.S. Dist. LEXIS 1907, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....25

*Gonzales v. Uber Techs., Inc.,* 305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....29, 30

*Greenley v. Kochava, Inc.* 684 F. Supp. 3d 1024 (S.D. Cal. 2023)....29

*Harris v. iHeart Media, Inc.,* No. 25-cv-06038-EKL, 2026 U.S.Dist.LEXIS 23256 (N.D.Cal. Jan. 29, 2026) ....25

*Herbal Brands, Inc. v. Photoplaza, Inc.* (9th Cir. 2023) 72 F.4th 1085....16, 19, 20

*In re Zynga Privacy Litig.,* 750 F.3d 1098 (9th Cir. 2014) ....29

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....16

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936)....12, 13

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023)....21

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003)....21

*LNS Enters. LLC v. Cont'l Motors, Inc.,* 22 F. 4th 852 (9th Cir. 1977) ....17

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)....22

*Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218 (9th Cir. 2011) ....16, 17, 18

*Moody v. C2 Educ. Sys,* 742 F. Supp. 3d 1072 (C.D. 2024)....28

*Mt. Hawley Ins. Co. v. Icon West, Inc*., No. 2:23-cv-03905-SVW-MAR 2023 U.S. Dist. LEXIS 229780 (C.D. Cal. Dec. 26, 2023)....14

*Patel v. Facebook*, 932 F.3d 1264 (9th Cir. 2019)....23

*People v. Braden,* 14 Cal. 5th 791 (2023) ....30

*People v. Manzo*, 53 Cal. 4th 880 (2012) ....30

*People v. Platz*, 136 Cal. App. 4th 1091 (2006)....30

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .......................................... 24, 25

*Pub. Emps. Ret. Ass'n of N.M. v. Earley (In re PG&E Corp. Sec. Litig.)*, 100 F.4th 1076 (9th Cir. 2024) .......................................... 13, 15

*R.C. v. Sussex Publrs., LLC* (N.D.Cal. Feb. 2, 2026, No. 24-cv-02609-JSC) 2026 U.S.Dist.LEXIS 21560 .......................................... 30

*Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) ........ 23

*Riganian v. LiveRamp Holdings, Inc.* (N.D.Cal. 2025) 791 F. Supp. 3d 1075 ................ 30

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) .................... 20

*Shah v. Fandom, Inc.,* No. 24-CV-01062-RFL, 2024 U.S. Dist. WL 4539577 (N.D. Cal. Oct. 21, 2024) .......................................... 23

*Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016) .......................................... 22

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......................................... 22

*Valenzuela v. Nationwide Mutual Ins. Co.*, (C.D.Cal. 2023) 686 F. Supp. 3d 969 ......... 21

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .................................. 16

*Yamashita v. LG Chem, Ltd.,* 62 F.4th 496 (9th Cir. 2023) .................................. 17, 19, 20

*Yong v. I.N.S.*, 208 F.3d 1116 (9th Cir. 2000) .......................................... 13, 14

<u>Statutes</u>

Cal. Penal Code § 629.51 .......................................... 29

Cal. Penal Code § 638.50 .......................................... 27, 28, 29

Cal. Penal Code § 638.51 .......................................... 26

**MEMORANDUM OF POINTS AND ANTHORITIES**

## I. INTRODUCTION

This action arises from Defendant's unlawful installment of a "trap and trace" device on its website without consent from visitors to its website. Defendant Rokt U.S. Corp. ("Defendant" or "Rokt") partnered with the California-headquartered data brokers LiveRamp, Inc., Twilio, Inc., and Apps Flyer, Inc. (collectively "the Data Brokers") to install their Data Broker Software Development Kits ("DBSDK") as a trap and trace device on Defendant's website www.rokt.com ("the Website"). Defendant then use these DBSDKs to collect and transmit private information from California visitors of its website, including Plaintiff Elizabeth Haviland ("Plaintiff"), to the Data Brokers for "commercial purpose of recognizing, profiling, retargeting, and monetizing California consumers" for mutual financial gains. (ECF, No. 20, Second Amended Complaint ("SAC").)

With the California visitors' private information already transmitted to the possession of the Data Brokers, Defendant, "appearing specially," filed a Motion to Stay this Action ("the Stay Motion") pending a writ proceeding in *Variety Media, LLC v. Superior Court*, LASC Case No. 25STCV01865 (Cal. Ct. App. 2d. Dist. Nov. 21, 2025) (the "*Variety* Appeal"); in the alternative to the Stay Motion, Defendant seeks a Motion to Dismiss based on the following: (1) lack of personal jurisdiction (the "12(b)(2) Motion"), (2) lack of subject matter jurisdiction based on Article III standing (the "12(b)(1) Motion"), and (3) failure to state a claim (the "12(b)(6) Motion) (collectively, "Rule 12 Motions," and, together with the Stay Motion, "the Motions").

This Court should deny each of the Motions in its entirety.

- The Stay Motion fails because it seeks an indefinite stay as the briefing continues, causing Plaintiff harms.
- the 12(b)(2) Motion fails because Plaintiff is not required to show "differential targeting" of the forum for personal jurisdiction (*Briskin v. Shopify, Inc.* (9th Cir. 2025) 135 F.4th 739, 757-758 (*en banc*)) and Defendant has an office in San Franciso, leveraging the technology sector in the City.

- The 12(b)(1) Motion fails because the violation of Plaintiff's privacy rights under CIPA is a concrete and particularized injury. *Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.),* 956 F.3d 589, 598 (9th Cir. 2020).
- The 12(b)(6) Motion is based on its erroneous interpretation of the CIPA.

In the alternative, if the Court is inclined to grant the Stay Motion, as it is the lead Motion, Plaintiff respectfully request that the Court does not rule on the Rule 12 Motions and allow limited jurisdictional discovery during the stay for judicial efficiency.

## II. STATEMENT OF RELEVANT FACTS

Plaintiff, a citizen of California residing within the Eastern District of California, (SAC, ¶12) brings this action for violation of the California Trap and Trace Law (Cal. Pen. Code § 638.51) against Defendant, alleging Defendant is "an ecommerce technology company that uses its Website to market, promote, and commercialize its advertising and ecommerce technology products. (SAC, ¶13.) Plaintiff does not allege it is a "B2B" company, as claimed in the moving paper ("*Motion*"), *Motion*, *11.

On February 25, 2026, Plaintiff filed a complaint for class action against Defendant, alleging privacy harms, resulting from Defendant's use of DBSDKs on its Website as a trap and trace device (ECF No. 1.) Instead of opposing Defendant's initial motion to dismiss dated April 15, 2026 (ECF No. 6), Plaintiff filed the First Amended Complaint ("FAC") on May 6, 2026. (ECF No. 14.) Before this Court had a chance to rule on the initial motion, Plaintiff filed the Second Amended Complaint ("SAC") on May 29, 2026, to correct the name of Defendant to Rokt US Corp, without substantive change to the FAC upon stipulation. (ECF No. 18.)

In the SAC, Plaintiff seeks, in addition to statutory damages, injunctive relief, enjoining Defendant's conduct from continuing to violate the CIPA, and an order that data unlawfully obtained be disgorged. (*SAC*, *18 "PRAYER.") Defendant does not deny it installed DBSDKs on the Website or partnered with Data Brokers. (*See generally Motion*.)

### A. Plaintiff Alleges That Defendant Violated CIPA, Section 638.51.

#### 1. Defendant partnered with the Data Brokers to deanonymize identifying data from the Website visitors

In the SAC, Plaintiff alleges that Defendant entered into an agreement with the Data Brokers, which has registered with California Data Broker Registry (*SAC*, ¶8) "to deanonymize, identify and target prospective customers." *SAC,* ¶24. Plaintiff explains that the Data Brokers' core business is to collect, aggregate, analyze, and sell or license personal and non-personal data about individuals and organizations." *SAC*, ¶19. The Data Brokers collect information from various sources, such as web activity and cookies, by "[t]racking users via cookies, pixels, and device fingerprinting across the websites and apps" to deanonymize otherwise anonymous user. *SAC*, ¶20.

The Data Brokers achieve their business objective by using the DBSDKs. These DBSDKs are designed to track and correlate visitors by capturing electronic impulses designed to identify them via means of "'browser fingerprinting,' a process by which Data Brokers are able to ascertain the identity of a website visitor by plotting hundreds of personal identifiers, including a user's geolocation, device information, identification and cross-referencing of malicious cookies installed on the user's devices, and other traits evident from a user's browser." *SAC*, ¶18. For instance. one of the Data Brokers the RampID shares the data collected and processed with dozens of ad tech partners so that all parties who pay for it can identify the user and see the user's online habits. *SAC*, ¶43. Partnering with the Data Brokers, Defendant installed the DBSDK's on its Website to "deanonymize, identify and target prospective customers" and purchased the data from the Data Brokers, receiving other relevant data about Plaintiff from the Data Brokers. *SAC*, ¶¶24 and 59.

#### 2. The DBSDKs are a "trap and trace" device

The DBSDKs are a trap and trace device under Cal. Penal Code § 638.50(c), not a "pen register" under section 638.50(b), *SAC*, ¶7. Plaintiff alleges that "[t]he DBSDKs are processes within the meaning of Penal Code section 638.50 [ ] that automatically

capture incoming electronic impulses from a user's browser and transmit identifying information to third-party Data Brokers." *SAC,* ¶30. Plaintiff further explains the DBSDKs "capture 'routing, addressing, or signaling information' because they collect and transmit information used to route, address, identify, and process electronic communications, including IP address, URL, referrer URL, useragent string, cookie IDs, pixel IDs, advertising IDs, timestamps, browser characteristics, device characteristics, and geolocation signals." *SAC,* ¶31. Plaintiff pled that the DBSDKs are designed to identify the source of electronic communication sent from devices visiting the Website "by collecting non-content identifiers associated with the user, browser, device, network location and website visit." *SAC,* ¶32. The Data Brokers then took Plaintiff's information received from the DBSDKs and added it to their profiles of Plaintiff. *SAC*, ¶59. In exchange, Defendant received other data obtained by the Data Brokers regarding Plaintiff. *Id.*

**3. Plaintiff suffered concrete injury from Defendant's conduct**

Plaintiff pled that she suffered a concrete injury because Defendant's disclosure of her private information to Data Brokers invaded "Plaintiff's legally protected privacy interest in controlling the dissemination of information that identifies her device, browser, location, and browsing activity." *SAC*, ¶¶ 60-67. She "was further injured because Defendant's conduct exposed her to continuing downstream use of her information by entities operating outside Plaintiff's knowledge and control. *SAC*, ¶64.

**4. Defendant leverages the technology sector in San Francisco for its AI-driven project "Rokt Catalog"**

The allegations in the SAC and the Declaration of Marilyn Wagman ("Wagman Decl.") submitted in support of the Motions, subject to Plaintiff's Evidentiary Objection, disclose that Defendant maintains significant contact with California. Plaintiff pled that Defendant regularly and knowingly engages with California residents through the use of the Website to conduct financially beneficial commercial surveillance on them. *SAC*, ¶ 2. Plaintiff concludes that Defendant purposefully directed its conduct toward California

as it carried out the surveillance of California residents by deploying the DBSDKs to collect and transmit identifying information from California residents to "the California-registered data brokers and advertising technology vendors whose business model depends on identifying, profiling, and monetizing California residents." *SAC*, ¶5. Defendant can identify the California residents as the DBSDKs collect "geolocation signals, IP-address-based location information, browser and device identifiers, referral information, page URL information, cookie identifiers, and other information reasonably likely to identify whether a visitor was located in California." *SAC*, ¶6.

In addition to partnering with the Data Brokers to target California residents via the DBSDKs, Defendant's Global marketing Director Marilyn Wagman affirms that Defendant has a California office focused on Defendant's "'Rokt Catalog' product, which is an AI-powered marketplace that enables e-commerce retailers to expand their product assortment." (Wagman Decl., ¶12.) Although Ms. Wagman neglects to mention in her declaration, Defendant's California office is located in San Francisco[1], which touts itself as the Global hub for artificial intentigence investment.[2]

**B. <u>The *Variety* Appeal, Still in Briefing Phase, Is Irrelevant.</u>**

On June 27, 2025, plaintiff Sean Rose filed a First Amended Complaint in *Rose v. Variety Media, LLC*, Case No. 25STCV01865, alleging that defendant Variety Media LLC ("Variety") violated CIPA by installing on its website two "trackers," which constitute "pen registers" under Cal. Penal Code § 638.50(b). *See* Exh. A, "Rose Complaint," ¶¶ 1-4. Rose did ***not*** sue Variety for installation or use of any "trap and trace device" under Cal. Penal Code § 638.50(c). Demurring to the Rose's FAC, Variety argued that "Plaintiff alleges that Variety's technology qualifies as a 'pen register' under Section 638.51 [ …] though not as a 'trap and trace device.'" *See* Exh. B, "Demurrer," at 11:18-20.

The court overruled Variety's demurrer to the FAC, noting that the plaintiff

---

[1] https://www.rokt.com/talk-to-an-expert (accessed on June 22, 2026.)
[2] https://www.sf.gov/cross-cutting-technologies-and-innovation (accessed on June 22, 2026.)

disagreed with Variety's contention that Cal. Penal Code § 638.51 "does not apply to online, non-telephonic communications[,]" arguing that "the statute defines 'pen register' broadly and that federal courts interpreting [the California Invasion of Privacy Act] have determined that 'online trackers or tracking software' are 'pen registers' under section 638.51." Exh. C, *In re Moving Party: Variety Media, LLC* 2025 Cal. Super. LEXIS 60788, *3. The court also rejected Variety's contention that the California Consumer Privacy Act, or "CCPA," precludes application of § 638.51 to internet communications. *Id.*, at *4.

On November 11, 2025, Variety appealed (the "Petition"). *See* Defendant's Exhibit 2. The "Question Presented" for the Court by Petitioner Variety states:

> Did the Respondent Court err in overruling Petitioner's demurrer to Plaintiff's Amended Complaint on the grounds that Penal Code Section 638.51 —a law passed to regulate the use of telephonic pen registers by law enforcement—applies to routine, ubiquitous software processes implemented by virtually all commercial websites? *Id.*, at 15.

Notably, the appellate court has not even scheduled an oral argument. Exh. D. The *Motion*, including Wagman Decl., does not claim that the Defendant has inactivated its trap and trace devices or the Data Brokers deleted the privacy information of Plaintiff. The harms to Plaintiff, and California residents, continue meanwhile.

## III. <u>THIS COURT SHOULD DENY DEFENDANT'S STAY MOTION AS DEFENDANT CANNOT MEET THE REQUISITE HIGH BURDEN.</u>

Because Defendant cannot satisfy the high burden of establishing its need to stay this action, this Court should deny the Stay Motion. The U.S. Supreme Court in *Landis v. N. Am. Co.*, 299 U.S. 248(1936) vacated the stay order pending a ruling in another case on appeal because '[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* At 599. The progeny of *Landis* makes it clear that the party seeking a stay faces a "heavy burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

The Ninth Circuit has "identified three non-exclusive factors courts must weigh

when deciding whether to issue a docket management stay: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." ("*Landis* Factors") *Pub. Emps. Ret. Ass'n of N.M. v. Earley (In re PG&E Corp. Sec. Litig.)*, 100 F.4th 1076, 1085 (9th Cir. 2024). In addition, "[a] district court's concern for the last factor, which courts refer to as 'judicial efficiency,' standing alone ***is not necessarily a sufficient ground to stay proceedings***." *Earley*, 100 F.4th at 1085 (emphasis added) (quoting *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).) The *Earley* court also emphasized that "[e]ven if there are efficiencies to be gained by a stay [under *Landis*], the district court must also weigh the relative hardships that a stay might cause." *Id.,* at 1087 (citing *Landis*, 299 U.S. at 254-55; *CMAX , Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Therefore, "if there is even ***a fair possibility*** that the stay . . . will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. In particular, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2004).

This Court should deny the Stay Motion because all three Landis factor favor denial of the Stay Motion. If the Court is inclined to stay this case, which it should not, Plaintiff respectfully request that this Court decline to rule on the Rule 12(b) Motions and allow jurisdictional discovery while waiting for the decision in the *Variety* Appeal.

**A. Defendant Seeks an Indefinite Stay, Which Militates against a Stay.**

In granting and lifting stays, a court must weigh "the length of the stay against the strength of the justification given for it." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). Court have consistently held that "stays should not be indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir.2007). Further, "[i]f a stay is especially long or its term is indefinite, [courts] require a

greater showing to justify it." *Yong*, 208 F.3d at 1119 (finding five months is indefinite). Furthermore, a stay pending the resolution of an intermediate appeal, which itself could be appealed to a higher court, constitutes an indefinite stay. *Id.*; *see also Mt. Hawley Ins. Co. v. Icon West, Inc.*, No. 2:23-cv-03905-SVW-MAR 2023 U.S. Dist. LEXIS 229780, at *10-11 (C.D. Cal. Dec. 26, 2023) ("staying this case until the resolution of the California state appeal would be an indefinite stay.")

In *Yong*, vacating the stay order of five months, the court reasoned that even if the stay terminates upon the resolution of an appeal in another case, due to a mere possibility of the Supreme Court granting certiorari to review the court's appellate decision, "the stay could remain in effect for a lengthy period of time, perhaps for years if [its] decision [ ] is reversed and the case is remanded for further proceedings." *Yong,* 208 F.3d at 1119.

Here, Defendant seeks a stay that is indefinite. Although the California appellate court typically issue its decision "within three months after" oral argument (*Motion*, *13, fn. 1), the three months period does not commence until after the oral argument. In this case, the court has not even scheduled an oral argument. In fact, the court is still requiring supplemental briefs. Exh. D. No one, including the Defendant, knows when the Court of Appeals will close briefing schedule, schedule an oral argument, and actually conduct an oral argument in next six months. Even a five month stay has been found to be indefinite. *Yong*, 208 F.3d, at 1119. Furthermore, the losing party can still appeal to the California Supreme Court, and "the stay could remain in effect for a lengthy period of time, perhaps for years if [its] decision [ ] is reversed and the case is remanded for further proceedings." *Yong,* 208 F.3d, at 1119; see also *Mt. Hawley Ins.*, at *10-11. Therefore, this Court should deny the Stay Motion or, alternatively, require Defendant to make an even greater showing to justify an indefinite stay, which it fails to do.

**B. <u>The Granting of the Stay Will Cause Damages to Plaintiff</u>.**

The stay will clearly increase the damages to Plaintiff, and California residents. Defendant does not deny that it deployed the DBSDKs or removed them from the Website. Nor did Defendant retract or recover the personal identifying data of the Website

visitors, including Plaintiff's. In effect, the Data Brokers are continuing to exploit the personal data they received, causing greater harms. Therefore, this factor clearly favors Plaintiff against the stay.

**C. Defendant Cannot Show a Clear Case of Hardship or Inequity.**

The only prejudice Defendant claims is having to defend this case by expending time and resources. (*Motion*, *15.) However, having to defend a suit "does not constitute a clear case of hardship or inequity within the meaning of *Landis," Lockyer*, 398 F.3d, at 1112. Also, Defendant seeks an indefinite stay pending the Court of Appeals decision, unlike the cases cited by Defendant, pending a decision already from the California Supreme Court. *Brinkley v. Monterey Fin. Servs., LLC,* No. 16-cv-1103, 2020 WL 1929023 *15 (S.D. Cal. Apr. 21, 2020); *Erceg v. LendingClub Corp*, 475 F.Supp.3d 1071, 1077 (N.D. Cal. 2020). Therefore, Defendant's claim of hardship for having to expend time and resources does not warrant a stay.

**D. Judicial Efficiency Factor Does Not Favor Stay, Especially As the Issues in the Variety Appeal Are Not Determinative of This Action.**

Because the issues to be decided in the *Variety* Appeal clearly departs from the claims by Plaintiff, this factor too favors denial of the Stay Motion. As a preliminary matter, judicial efficiency, although important, but standing alone, should not carry significant weight in ruling on the Stay Motion, as the hardship factor favors Plaintiff in this case. (*See Earley*, 100 F.4th at 1085.) Also, the pertinent issue in the instant case and the *Variety* Appeal are different – the issue and the ultimate decision in the *Variety* Appeal do not apply to this case. In this case, Plaintiff seeks to redress harms from Defendant's unlawful use of a trap and trace device pursuant to Cal. Pen. Code § 638.50(c); whereas the statutory issue in the *Variety* Appeal pertains to defendant's unlawful use of the trackers as "pen registers" under section 638.50(b).

Because the decision in the Variety Appeal should not affect the disposition of this case, all three Landis factors favor denial of the Stay Motion. If the Court is inclined to stay this case, which it should not, Plaintiff respectfully request that this Court decline to

rule on the Rule 12(b) Motions and allow discovery limited to the jurisdictional issues while waiting for the decision in the *Variety* Appeal.

## IV. RULE 12(b)(2) MOTION MUST BE DENIED BECAUSE DEFENDANT "PURPOSEDLY DIRECTED" ITS BUSINESS ACTIVITIES TO CALIFORNIA.

Under *Briskin*, this Court has, and should exercise, personal jurisdiction over Defendant who installed DBSDKs on its Website; expressly targeted California for its commercial activities; and maintains an office in San Francisco to focus on its AI-driven project leveraging tech resources in San Francisco. *Briskin,* 135 F.4th 757-758 (abrogating the requirement for "forum specific focus" or "differential targeting").

Substantively, the district courts in California apply California's long-arm statute under Cal Civ. Proc. Code § 410.10, which provides for personal jurisdiction to the maximum extent that the Fourteenth Amendment's Due Process Clause allows. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). To exercise personal jurisdiction over Defendant, Defendant must have "certain minimum contacts" with California "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Ninth Circuit applies a 3-part “minimum contacts” test for specific personal jurisdiction over a non-resident defendant. The test requires a showing that: “(1) the non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant’s forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.” *Herbal Brands, Inc. v. Photoplaza, Inc.* (9th Cir. 2023) 72 F.4th 1085, 1090. Further, for tort-like claims like the privacy and data use violations, courts undertake "purposeful

direction" analysis under the Calder "effects test," which requires the plaintiff to establish "that the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix*, 647 F.3d at 1228 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). The Calder effects test focuses on the forum in which "the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.*

Procedurally, on a motion to dismiss for lack of personal jurisdiction, the court 'take[s] as true all uncontroverted allegations in the complaint.'" *First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) (quoting *LNS Enters. LLC v. Cont'l Motors, Inc.,* 22 F. 4th 852, 858 (9th Cir. 1977)). Where a defendant's Rule 12(b)(2) motion to dismiss "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.,* 62 F.4th 496, 502 (9th Cir. 2023) (citation and internal quotation marks omitted). This showing may include reasonable inferences made from a complaint's material factual allegations in the plaintiff's favor. *See, e.g., Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility.")

### A. ***Briskin* Eliminates a Requirement for "Forum Specific Focus."**

Applying the Calder effects test in the Internet Age (*Briskin*, 135 F. 4th at 752), the court in *Briskin*, *en banc*, held that "express aiming" does not require "forum-specific focus" or "differential targeting" of a specific forum. *Id.*, at 757-758 (rejecting defendant's argument against personal jurisdiction as it operates nationwide and thus is agnostic as to the location of the plaintiff.) Central to *Briskin*'s analysis of express aiming and purposeful direction was finding by the court that the harvesting or interception of data from the devices in California constituted an "entry into the state of California by electronic means" which for the personal jurisdiction analysis "certainly is a relevant contact with

the forum state." *Id*. The court ultimately held that an ecommerce company, which operates nationwide, as Defendant here, "'expressly aims' its wrongful conduct toward a forum state when its contacts are its "own choice and not 'random, isolated, or fortuitous,'" even if that platform cultivates a "nationwide audience [ ] for commercial gain." *Mavrix*, 647 F.3d at 1230; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S.* 351, 359 (quoting *Keeton,* 465 U.S. at 774).

**B. <u>Plaintiff Pled Facts to Satisfy the Calder Effects Test.</u>**

Under *Briskin*, Defendant is subject to this Court's jurisdiction.

**1. <u>Defendant expressly aimed its activities at California</u>**

Defendant ignores *Briskin* and contends it is not subject to personal jurisdiction because "the Website is nationally accessible [and] Rokt does not market to California residents specifically (or treat California visitors differently from visitors in other states)." *Motion,* *19, 1-4. In another words, Defendant seeks to escape personal jurisdiction by arguing it lacked "forum-specific focus" or did not differentially targeted California. *Briskin* rejected these exact contentions. In fact, Defendant does not deny it contracted with the Data Brokers or installed the DBSDKs on its Website. *See generally, Motion*. Defendant "cultivated their nationwide audience for commercial gains" by harvesting or intercepting data from the devices in California using DBSDKs, thereby, expressing aiming its activities at California. *Mavrix*, 647 F.3d at 1230.

Wagman Decl. discloses Defendant has more than just the Website. It also maintains a physical location in San Francisco to focus on its AI-driven project called "Rokt Catalog," taking advantage of the City, "the Global hub for artificial intentigence investment." (https://www.sf.gov/cross-cutting-technologies-and-innovation).

Whether or not Plaintiff chose to utilize the Website is irrelevant to the express aiming analysis. *Motion,* *19. The Calder effects test focuses on where "the defendant's actions were felt" and not where **defendant** felt plaintiff's contact. *Mavrix*, 647 F.3d at 1228. The fact that Defendant installed the DBSDKs on its nationwide Website to intercept and harvest data from California devices, including Plaintiff's, and maintains an

office in San Francisco for its AI-driven project clearly satisfies the "express aiming" requirement of the Calder effects test.

### 2. Plaintiff met the first and third requirements

In the Motion, Defendant does not dispute that Plaintiff met the first and third requirements of the Calder effects test. In fact, Defendant does not deny that it installed the DBSDKs, a trap and trace device, on its nationwide Website. As alleged in the SAC, Defendant knew or should have known that the DBSDKs intercept and harvest identifying information from the devices in California to identify "whether a visitor was located in California." *SAC*, ¶6. As such, Plaintiff satisfied all the requirements of the Calder effects test for the personal jurisdiction over Defendant.

### C. Plaintiff's Section 638.51 Claim "Arises from or Relates to" Defendant's California Activities.

The second prong of the Ninth Circuit's analysis of minimum contacts for specific personal jurisdiction "requires that a plaintiff's claim arise out of or relate to the defendant's contacts with the forum." *Herbal*, 72 F.4th at 1096. Although "the first prong of that [standard asks about causation [ ]the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing" *Ford*, at 592 U.S., at 362; *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023) (*Ford* means "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by" Ford's business activities).

Here, the second prong is easily met. Defendant does not deny that it installed the DBSDKs on its marketing site, when Defendant knew or should have known about California's stringent laws on privacy, including CIPA. As stated above, it "expressly aimed" its activities at California. Plaintiff would not have suffered the harms she alleges – the invasion of her privacy – "[b]ut for Defendant's installation and use of the DBSDKs on the Website." *SAC,* ¶8; *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("The question, therefore, is this: but for [Defendants'] contacts with . . . California, would [Plaintiff's] claims against [Defendant] have arisen?"); *Rio Properties, Inc. v. Rio Intern.*

*Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).

Defendant misunderstands the law. First, Defendant attempts to avoid personal jurisdiction by putting the focus on Plaintiff's contact with Defendant, not Defendant's contacts with California, Next, Plaintiff suffered harms to her privacy not simply because Defendant had partnered with the California-based Data Brokers but because the DBSDKs on its Website caused "the kind of injury that would 'tend to be caused by' [Rokt's] contacts with California merchants and consumers." *Yamashita*, 62 F.4th, at 505. Accordingly, Plaintiff's Section 638.51 claim clearly "arises from or **relates to**" Defendant's California activities. *Ford*, 592 U.S. at 362 (emphasis added).

**D. <u>Exercising Personal Jurisdiction over Defendant Comports with Substantial Justice and Fair Play.</u>**

Defendant fails to carry its burden that exercising personal jurisdiction would be unreasonable. To evaluate reasonableness, Ninth Circuit balances the following factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Herbal*, 72 F.4th at 1096.

All seven factors favor Plaintiff. For Factor 1, Defendant expressly aimed its activities at California by installing DBSDKs on its Website, even though it knew or it should have known California's strict law on privacy, including CIPA, and it continues to operate its AI-driven project by leveraging the technology sector in San Francisco; (Factor 2) Defendant already has an office in San Francisco, so it has no or limited burden of defending in California; (Factor 3) Plaintiff is not aware, and Defendant does not contend, there is any conflict with the sovereignty of the defendant's state; (Factor 4) California certainly has interest in adjudicating the dispute over its own statute; (Factor 5) the most efficient judicial resolution of the controversy over California statute is

available in California where both Plaintiff and one of Defendant's offices are located; (Factor 6) Plaintiff is an individual residing in California; and (Factor 7) Plaintiff is not aware of any alternate forum, which Defendant did not dispute in the Motion.

Defendant again blames Plaintiff. It contends that California courts have limited interests in adjudicating the matter because it concludes that Plaintiff is a "tester." In the SAC, Plaintiff does not identify herself as a "tester," like the plaintiffs in the cases cited by Defendant. Regardless of whether a plaintiff is a "tester," the Ninth Circuit has cautioned courts to avoid making credibility determinations against a litigant in Americans with Disability Act ("ADA") cases unless there is something other than the fact that "the litigant files a lot of [lawsuits] to instill doubts in his testimony." *Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023). The court in *Valenzuela v. Nationwide Mutual Ins. Co.*, (C.D.Cal. 2023) 686 F. Supp. 3d 969 had no trouble applying Langer to the CIPA claim. *Id.,* 974, fn. 2. Here, Defendant's contention should be similarly disregarded. Illegal corporate surveillance like Defendant's use of an illegal trap and trace device has unfortunately become pervasive and often undetectable and happens to everyone regardless of whether someone is a "tester." The only thing different about Plaintiff is that Plaintiff has decided to hold people accountable for their privacy violations instead of tacitly accepting the constant privacy violations.

In sum, the SAC satisfies all the requirement under California's long-arm statute for this Court to exercise personal jurisdiction over Defendant. In the alternative, Plaintiff requests limited jurisdictional discovery on the extent of Defendant's client base and the benefits its California office derives from what San Francisco offers to resolve the question of jurisdiction. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

## V. <u>PLAINTIFF SUFFERED A CONCRETE AND PARTICULARIZED INJURY-IN-FACT FOR ARTICLE III STANDING TO DEFEAT RULE 12(b)(1) MOTION.</u>

Defendant's 12(b)(1) Motion for absence of Article III standing must be denied as the courts in the Ninth Circuit recognize losing one's control over private information as a concrete and particularized injury. When "standing is challenged on the basis of the

pleadings," the court must "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2023); see also *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (citation omitted).

Article III requires plaintiff to show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) redressability by a favorable decision. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338-39 (2016) *(citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). An injury is "particularized" if it affects the plaintiff in a personal and individual way." *Spokeo,* 578 U.S. at 339. Also, an injury is "concrete" if it is "real" and not "abstract." *Id.*

The U.S. Supreme Court held that "concrete" injury includes "intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion" or those "specified by the Constitution itself." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Where the plaintiff alleges an "intangible harm," as here, the court assesses the injury-in-fact by looking to "both history and the judgment of Congress" or the legislature that enacted the provision. *Camplisson v. Adidas Am., Inc.* (S.D.Cal. 2025) 809 F. Supp. 3d 1095, 1104 (citing *Spokeo*, 578 U.S. at 340-41).

A statute providing a "bare procedural' protection" does not automatically confer Article III standing by pointing only to a violation of that provision; she "also must link it to a concrete harm." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020); *see also TransUnion*, 594 U.S. at 426. Whereas, if the legislature identifies a substantive right, a plaintiff can bring a claim for violation of the statute without "alleg[ing] any further harm to have standing." *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 983-84 (9th Cir. 2017); see also *Campbell*, 951 F.3d at 1118 (concrete interests protected by the Electronic Communications Privacy Act and the California Invasion of Privacy Act). As such, Defendant's 12(b)(1) Motion must be denied as Plaintiff pled Defendant violated her privacy rights under Cal. Pen. Code § 638.51 under CIPA.

**A. <u>The CIPA Provides Substantive Right, the Right of Privacy.</u>**

Courts recognize that "violations of the right to privacy have long been actionable at common law." *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). Moreover, the right to privacy "encompass[es] the individual's **control** of information concerning his or her person." *Eichenberger,* 876 F.3d at 983 (emphasis added).

The CIPA is not merely a procedural statute. In fact, the Ninth Circuit acknowledges that "the statutory claims, the legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed...CIPA." *In re Facebook,* 956 F.3d at 598. The court in *In re Facebook* held that CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.*

In addition, binding Ninth Circuit precedent has explained that rights codified in CIPA are substantive and not procedural rights that, when violated, support Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought [under CIPA] codify substantive rights to privacy."). Therefore, Plaintiff is not required to a showing of additional injury beyond the violation of that right or that the information collected must necessarily be sensitive and misused. *See, e.g., Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *5 (C.D. Cal. Apr. 3, 2025). Additionally, "courts decline to dismiss invasion of privacy claims where plaintiffs allege that the intercepted information is used to compile a user's browsing history across other websites," as alleged here (*SAC, ¶67*). *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) (finding that intrusion "which allegedly allowed NaviStone to associate Revitch's browsing habits with his identity, is a highly offensive breach of norms"); *Shah v. Fandom, Inc.,* No. 24-CV-01062-RFL, 2024 U.S. Dist. WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024) (finding standing where the plaintiffs alleged they were "tracked across multiple visits for marketing and advertising purposes").

In sum, because the CIPA codifies substantive rights, Plaintiff's claim of violation of the CIPA, meets Article III standing without having to allege additional injury.

**B. <u>Plaintiff Alleges a Concrete and Particularized Injury-in-Fact Resulting from Defendant's Violation of Plaintiff's Privacy under section 638.5.</u>**

There is no dispute that Plaintiff suffered a concrete injury. Plaintiff pled that Defendant violated her privacy rights under section 638.5 by using DBSDKs, a trap and trace device, when her identifying information by way of electronic impulses was sent to the Data Brokers without her consent. *SAC*, ¶44. Defendant, in agreement with the Data Brokers, in turn, received the profiles of the visitors of its website, such as Plaintiff, for its own financial gains. *SAC*, ¶59. As a result of Defendant's surveillance using the DBSDKs, Plaintiff pled she suffered harms when she lost control of her legally protected privacy interests in controlling her private information, including exposure to continuing downstream use of her information by entities operating outside Plaintiff's knowledge and control by Defendant's use of the DBSDKs in violation of section 638.51. *SAC*, ¶¶61 – 65. Plaintiff's loss of control over her private information is an actionable "legally protected interest that is concrete and particularized" under Article III. *See In re Facebook,* 956 F.3d, at 598. These are exactly the type of rights the CIPA was enacted to protect. *See e.g., Brown,* 685 F. Supp. 3d at 924; *Conohan,* 2025 WL 1111246, at *5.

**C. <u>*Popa* Does Not Divest Plaintiff of Article III Standing</u>**

Defendant's heavy reliance on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) is misguided because *Popa* "did not set forth a new rule of law—the issue of whether a privacy violation gives rise to an injury-in-fact for purposes of Article III standing." *Dellasala v. Samba TV, Inc*. (N.D.Cal. Oct. 30, 2025, No. 3:25-cv-03470-JSC) 2025 U.S.Dist.LEXIS 214580, at *6 (citing *In re Facebook, Inc.,* 956 F.3d at 598).

*Popa* involved plaintiff's claim against defendant's use of session-replay technology under Pennsylvania's wiretapping law. *Popa,* 153 F.4th, at 786. *Popa* plaintiff alleged that the defendant's website collected information on plaintiff's interaction with the website, including what products the plaintiff browsed and where her mouse hovered

while on the website. *Id*. Notably, although the court did not find Article III standing, it also refused to overrule or even revisit *Eichenberger* and *In re Facebook* in reaching its decision (*Popa*, 153 F.4th at 794.), leaving intact the rule that provides plaintiff's loss of control over her private information is an actionable "legally protected interest that is concrete and particularized" under Article III. *Facebook,* 956 F.3d, at 598. Instead, "[g]iven that the information concerned how the plaintiff interacted with the site rather than her personal, private information, the *Popa* court found that the nature of the collected information was not 'embarrassing, invasive, or otherwise private' and did not fall within the traditional privacy harms at common law." *Camplisson v. Adidas Am., Inc.,* 809 F. Supp. 3d 1095, 1106.

Hon. Gonsalo P. Curiel of the Southern District in *Camplisson* distinguished *Popa* from the plaintiff's complaint alleging violation of CIPA § 638.51, as in this case. Hon. Curiel denied defendant's motion because "the collection of [p]laintiffs' information concerns their person [in *Camplisson*] is much broader in scope, and has been found to be a privacy harm in a wide variety of cases." *Id.* Hon Curiel reasoned that the session replay technology does not track anything beyond her interaction with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website. *Id.* (citing *Gabrielli v. Haleon US Inc.,* No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025).)

Other courts also refused to apply *Popa* for Article III purpose to claims alleging violation of section 638.51 for similar reasons. In *Harris v. iHeart Media, Inc.,* No. 25-cv-06038-EKL, 2026 U.S.Dist.LEXIS 23256 (N.D.Cal. Jan. 29, 2026), the court held that plaintiff sufficiently alleged Article III standing, distinguishing *Popa*, because "the degree of dissemination of Plaintiff's information is broad." *Id.,* 2026 U.S.Dist.LEXIS, at *3 ("that he scope of tracking at issue here is less like a "store clerk[] observing shoppers," and more like the "cradle-to-grave profile" discussed in *In re Facebook)* (citing *Gilligan v. Experian Data Corp*., No. 25-CV-02873-RFL, 2026 U.S. Dist. LEXIS 1907, 2026 WL 32259, at *2-3 (N.D. Cal. Jan. 6, 2026) [finding a concrete Article III injury where the

"scope of the alleged tracking . . . is materially more invasive than the limited tracking at issue in [Popa]"]; *Deivaprakash II,* 2025 U.S. Dist. LEXIS 193968, 2025 WL 2779193, at *1-2 [finding allegations regarding identical technology would satisfy Article III injury under Popa].)

Defendant's other argument against Article III standing by claiming Plaintiff is a "tester" is a *non sequitur* and should be rejected summarily. Therefore, in sum, Plaintiff sufficiently alleged Article III standing based on well-established case law.

## VI. THIS COURT SHOULD DENY PLAINTIFF'S 12(b)(6) MOTION AS THE COMPLAINT SUFFICIENTLY STATES DEFENDANT VIOLATED THE CIPA.

Defendant attempt to advance the position based on erroneous interpretation of the law and facts in seeking dismissal in its Rule 12(b)(6) Motion. Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1988). In ruling on a 12(b)(6) motion, the Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted). Plaintiff has met this well-established legal standard in her SAC.

### A. Statutory Framework for Penal Code, § 638.51

Cal. Penal Code, § 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), **a person may not install or use a pen register or a trap and trace device without first obtaining a court order** pursuant to Section 638.52 or 638.53.
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device …
> *Cal. Penal Code*, § 638.51(a), (b)(5) (Emphasis added.)

**B. <u>The DBSDKs are a Trap and Trace Device</u>.**

Cal. Penal Code 638.50(c) broadly defines a "trap and trace device" as:

> a device or process that captures the **incoming electronic** or **other impulses** that identify the originating number or other dialing, routing, addressing, **or signaling information** reasonably likely to identify the source of a wire or **electronic communication**, but **not the contents of a communication**.
> Cal. Penal Code § 638.50(c) (emphasis added).

**C. <u>The SAC Sufficiently Allege a Violation of the Section 638.51.</u>**

Accepting all facts alleged by Plaintiff as true, the SAC alleges all the required elements for the violation of section 638.51.

**1. Defendant Installed DBSDKs – a Prohibited Device.**

In the SAC, Plaintiff alleges, and Defendant does not deny, it has installed and uses DBSDKs on the Website. *SAC*, ¶¶17, 24, 33, and 37. Defendant did not obtain a court order prior to installing the DBSDKs on the Website. *SAC*, ¶65. Also, Defendant is not a provider of electronic or wire communication service. *See SAC*, ¶13.

**2. The DBSDKs are a "Process" to capture electronic impulses.**

The SAC pled that the DBSDKs installed on Defendant's Website are a process used to "identify the source of electronic communication by capturing electronic impulses" generated from Plaintiff's device to identify each anonymous visitor to the Website, including Plaintiff. See *SAC*, at ¶¶8, 18, and 29.

**3. The DBSDKS Collect data and "Signaling Information" to Identify Anonymous Website Visitors.**

Plaintiff alleges that the DBSDKs identify the source of electronic communication by capturing electronic impulses sent out from users' devices and identifying dialing, routing, addressing, and **signaling information** about or generated by users." *SAC*, ¶29 (emphasis added). Plaintiff also alleges that the DBSDKs "capture incoming electronic impulses from a user's browser" and "collect and transmit information used to route, address, identify, and process electronic communications, including IP address, URL, referrer URL, useragent string, cookie IDs, pixel IDs, advertising IDs, timestamps,

browser characteristics, device characteristics, and geolocation signals." *SAC*, ¶¶ 30-31. Thus, the information transmitted "constituted routing, addressing, signaling, and identifying information reasonably likely to identify the source of Plaintiff's electronic communication." *SAC*, ¶56.

The SAC further pled that Defendant's Website transmitted users identifying information to the Data Brokers to unmask the identity of the unsuspecting visitors to its website by associating it with persistent identifiers maintained by the Data Brokers for the purpose of "de-anonymization, attribution, retargeting, analytics, marketing optimization, and commercial profiling. *SAC*, ¶58. Accordingly, Plaintiff pled all of the elements for a violation of the CIPA.

**D. <u>The Statute Is Not Limited Solely to Telephones.</u>**

Defendant contends, erroneously, that the CIPA statute only applies to telephone line, telephones, or even telephone communications, but not the internet, based on its lengthy but inaccurate interpretation of legislative history and the statutory scheme. *Motion, *27.* However, Defendant is wrong. Statutory interpretation must be guided by the "plain meaning rule." *Campbell v. Allied Van Lines, Inc.*, 410 F. 3d 618 (9th Cir. 2005). As here, "where the language of a statute is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Id.*

There is nothing in the broad language of CIPA or Cal. Penal Code, § 638.51 that limits the statute to telephone line, telephones, or even telephone communications; in fact, several courts have held that the expansive language of Cal. Penal Code § 638.51 and its corresponding definitions are broad and do not limit a trap and trace device to incoming phone calls or phones generally. *See e.g., Moody v. C2 Educ. Sys,* 742 F. Supp. 3d 1072, 1078 (C.D. 2024) (in denying Defendant's motion to dismiss the Plaintiff's §638.51 claim, Judge Klausner stated "Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'"); Cal. Penal Code §§ 638.50(b)–(c); *Greenley v. Kochava, Inc.* 684 F.

Supp. 3d 1024, 1050-51 (S.D. Cal. 2023) (denying defendant's motion to dismiss with respect to plaintiff's Section 638.51 claim.)

Specifically, the relevant statute is written in the disjunctive using "or" and is not so limited. The statute is expressly satisfied by alleging the capture of "signaling information" (Cal. Pen. Code § 638.50(c)), including the transfer of signals, data, "intelligence of any nature." Cal. Pen. Code §629.51(a)(2). For that reason, the surveillance process the DBSDKs use satisfies the statute because the statute's definition of a "trap and trace device" is stated in the disjunctive and includes the capture of "signaling information" and "the transfer of signals, data, intelligence of any nature." *SAC,* ¶¶29, 56; Cal. Penal Code §§629.51(a)(2) and 638.50(c).

Accordingly, Plaintiff's attempt to limit the CIPA to telephone calls should be rejected outright based on the unambiguous language of the section 638.50.

**E. <u>"Communication" Does Not Require "Content."</u>**

Defendant contends that the SAC fails to allege the existence of any actual "communication" because Plaintiff's "interactions [] lack both "content" and the sender-recipient structure required by the statute. *Motion*, *32, 11-22. Defendant cites *Gonzales v. Uber Techs., Inc.,* 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) to support its position that opening a webpage is not a communication with content. *Id.; Motion*, *32, 6-10. Defendant's position is untenable. A communication for the purpose of CIPA does not require content. Specifically, Section 638.50(c) does not require a trap and trace device to identify the contents of a communication, or the communication must have content. *See* Cal. Penal Code § 638.50(c); *Gonzales*, 305 F. Supp. 3d at 1084 (under the Wiretap Act, 18 U.S.C.S. § 2511 "contents' refers to the intended message **conveyed by** the communication" [emphasis added]), citing *In re Zynga Privacy Litig.,* 750 F.3d 1098, 1106 (9th Cir. 2014).

Inexplicably, Defendant then argues that Plaintiff's claim should be dismissed because her claim rests on the collection of contents by the DBSDKs. *Motion*, *32, ln. 23-38. Nowhere in the SAC does Plaintiff allege that the DBSDKs collected any intended

message or include "any information concerning the substance, purport, or meaning" of her visit to the Website. *Gonzales*. 305 F. Supp. 3d at 1084. Accepting all facts alleged by Plaintiff "as true," this Court should reject Defendant's confusing, contradictory contentions requiring "content" in denying the Rule 12(b)(6) Motion.

**F. <u>Defendant's Plea for the Rule of Lenity Also Should Be Rejected.</u>**

Defendant incorrectly argues that the rule of lenity should be applied as there is ambiguity with interpreting CIPA because it is a criminal statute. See *Motion*, at 33. However, the rule of lenity is applied by the state courts only when there is "an **egregious** ambiguity and uncertainty." *R.C. v. Sussex Publrs., LLC* (N.D.Cal. Feb. 2, 2026, No. 24-cv-02609-JSC) 2026 U.S.Dist.LEXIS 21560, at *16-17(citing *People v. Braden,* 14 Cal. 5th 791, 824, 308 (2023) (cleaned up).) No such egregious ambiguity and uncertainly exists with section 638.50(c) or 638.51(a).

The CIPA statute is very broad and unambiguous as set forth above, and therefore, the plain meaning rule applies. *People v. Platz*, 136 Cal. App. 4th 1091, 1103 (2006) ("due process does not compel the court to violate the plain meaning of the words of the statute. If the language contains no ambiguity, the court presumes the Legislature meant what it said, and the plain meaning of the statute governs.")

Second, the rule of lenity, which is a "tie-breaking principle, of relevance when two reasonable interpretations of the same provision stand in relative equipoise" does not apply because there is no need to break the tie. See *People v. Manzo*, 53 Cal. 4th 880, 890 (2012). "The rule of lenity applies only if the court can do **no more than guess** what the legislative body intended." *Id.* at 889. (emphasis added); see also *Fregosa v. Mashable, Inc.* (N.D.Cal. Oct. 9, 2025, No. 25-cv-01094-CRB) 2025 U.S.Dist.LEXIS 200770, at *26. (refusing to invoke the rule of lenity because "[t]he statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here."); *Riganian v. LiveRamp Holdings, Inc.* (N.D.Cal. 2025) 791 F. Supp. 3d 1075, 1094 (finding no "grievous ambiguity or uncertainty" in CIPA); *Garon v. Keleops USA, Inc.* (N.D.Cal. Sep. 2, 2025, No. 25-cv-02124-DMR) 2025 U.S.Dist.LEXIS

170745, at *15 (same). These courts did not have to guess, and this Court needs not invoke the rule of lenity either.

In sum, this Court should deny the Rule 12(b)(6) Motion because Plaintiff pled sufficient facts for Defendant's violation of the CIPA. Even if this Court is inclined to grant the motion, it should be granted with leave to amend, especially since this Court has not previously considered a 12(b)(6) motion. See, e.g., *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## VII. CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motions and vindicate Plaintiff from Defendant' unlawful invasion of Plaintiff's privacy.

DATED: June 24, 2026

TAULER SMITH LLP

By: /s/ Peter K. Chu
Peter K. Chu, Esq.
Attorneys for Plaintiff