Matthew E. Lewitz (SBN 325379)
mlewitz@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: (310) 393-4000
Facsimile: (310) 394-4700

*Attorney for Specially-Appearing Defendant Rokt US Corp.*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH HAVILAND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROKT US CORP., a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>Defendant. | Case No. 2:26-cv-00582-DJC-AC<br><br>**SPECIALLY-APPEARING DEFENDANT ROKT US CORP.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date: August 13, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7<br>Judge: Hon. Daniel J. Calabretta<br><br>Action Filed: February 25, 2026<br>FAC Filed: May 6, 2026<br>SAC Filed: May 29, 2026 |

## TABLE OF CONTENTS

**Page**


REPLY MEMORANDUM OF POINTS AND AUTHORITIES ....... 7
I. INTRODUCTION ....... 7
II. ARGUMENT ....... 7
A. A Stay of This Action is Appropriate Pending *Variety Media's* Resolution ....... 7
1. Plaintiff Mischaracterizes *Variety Media* ....... 7
2. Plaintiff Cannot Show Any Meaningful Prejudice From a Stay ....... 10
3. Rokt Faces Substantial Hardship in Being Forced to Litigate Potentially Moot Issues ....... 11
B. In The Alternative, Plaintiff's Claims Cannot Withstand Dismissal ....... 12
1. Plaintiff Fails to Establish Personal Jurisdiction ....... 12
i. Plaintiff Cannot Rely on Contradicted Allegations ....... 12
ii. Plaintiff's Theory Improperly Relies on Third-Party Conduct ....... 14
iii. Plaintiff Misapplies *Briskin* ....... 14
2. Plaintiff Fails to Establish Article III Standing ....... 16
3. Plaintiff Fails to State a Claim Under CIPA ....... 18
i. Plaintiff Incorrectly Construes CIPA's Statutory Scheme ....... 18
ii. The SAC Still Fails to Plead a Qualifying "Communication" ....... 20
iii. Plaintiff's Theory Is Internally Inconsistent and Implausible ....... 21
III. CONCLUSION ....... 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re A.N.*
(2020) 9 Cal.5th 343 ........ 19

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
811 F. App'x 421 (9th Cir. 2020) ........ 20

*Brinkley v. Monterey Fin. Servs., LLC*,
No. 16-cv-1103, 2020 WL 1929023 (S.D. Cal. Apr. 21, 2020) ........ 12

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 14, 15

*Burnell v. Swift Transp. Co.*,
No. 10-cv-809, 2011 WL 13352810 (C.D. Cal. Jan. 20, 2011) ........ 9

*Chinese Theatres, LLC v. Cty. of Los Angeles*,
(2020) 59 Cal.App.5th 484 ........ 19

*Crano v. Sojern, Inc.*,
Case No. 3:25-cv-02600-JSC, 2026 WL 1670136 (N.D. Cal. Jun 9, 2026) ........ 16

*D'Antonio v. Cable News Network, Inc.*,
No. 24-cv-3132, 2026 WL 1815527 (S.D.N.Y. June 24, 2026) ........ 9, 10

*Dadbod Apparel LLC v. Hildawn Design LLC*,
No. 2:24-cv-00188 DJC AC, 2024 WL 1886497 (E.D. Cal. Apr. 30, 2024) ........ 16

*Dawidzik v. Tesla, Inc.*,
Case No. EDCV 25-01982-KK-SPx, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ........ 16, 17

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026) (de Alba, J., concurring) ........ 10

*Dignity Health v. Blue Cross Blue Shield of Georgia, Inc.*,
Case No. 25-cv-07336-JST, 2026 WL 934194 (N.D. Cal. Apr. 7, 2026) ........ 15

*Dominguez v. Sonesta Int'l Hotels Corp.*,
648 F. Supp. 3d 1162 (N.D. Cal. 2023) ........ 9

*Erceg v. LendingClub Corp.*,
475 F.Supp.3d 1071 (N.D. Cal. 2020) ........ 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................17, 20

*First Capitol Consulting, Inc. v. NetTax, LLC*,
Case No. 2:23-cv-07837-MRA-AGR, 2025 WL 1090924 (C.D. Cal. Feb. 14, 2025) ....................12, 13

*Flores v. Bennett*,
675 F.Supp.3d 1052 (E.D. Cal. 2023) ....................12

*Gabriella v. Wells Fargo Fin., Inc.*,
No. 06-cv-4347, 2009 WL 188856 (N.D. Cal. Jan 26, 2009) ....................12

*Johnson v. Starbucks Corp.*,
No. 18-CV-06842, 2019 WL 3220273 (N.D. Cal. Jul. 17, 2019) ....................11

*Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*,
No. 19-cv-07831, 2019 WL 8064196 (C.D. Cal. Dec. 5, 2019)....................14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ....................16

*Landis v. North American Company*,
299 U.S. 248 (1936) ....................7, 10, 11, 12

*Langer v. Kiser*
57 F.4th 1085 (9th Cir. 2023) ....................18

*Lunn v. City of Los Angeles*,
629 F. Supp. 3d 1007 (C.D. Cal. 2022) ....................12

*Mahboob v. Educ. Credit Mgmt. Corp.*,
No. 15-cv-628, 2020 WL 7625144 (S.D. Cal. Dec. 21, 2020)....................8

*Mitchener v. CuriosityStream, Inc.*,
No. 25-cv-01471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)....................21

*Mt. Hawley Ins. Co. v. Icon West, Inc.*
No. 2:23-cv-03905-SVW-MAR, 2023 WL 9419127 (C.D. Cal. Dec. 26, 2023) ....................9

*Popa v. Microsoft*
153 F.4th 784 (9th Cir. 2025) ....................17

*Rodriguez v. IMDB.com, Inc.*,
No. 24-cv-14922, 2026 WL 886927 (L.A. Sup. Ct. Mar. 24, 2026) ....................21

*Rounds v. Case-Mate Inc.*,
No. 24-cv-08531-WLH, 2025 WL 1873999 (C.D. Cal. July 2, 2025)....................15

*Scanlon v. Curtis Int'l Ltd.*,
465 F.Supp.3d 1054 (C.D. Cal. 2020) ............................................................13, 14

*Schallert v. Laird Superfood, Inc.*,
No. 25-cv-12407, 2026 WL 1707585 (C.D. Cal. June 5, 2026) ..........................16, 17

*Schallert v. Orkin LLC*,
No. 24-cv-31244, 2025 WL 4332757 (L.A. Sup. Ct. Dec. 15, 2025).........................19

*Scharon v. Paramount Global*,
No. 25-cv-10585, 2025 WL 2996812 (L.A. Sup. Ct. Oct. 3, 2025)...........................19

*Selinger v. Ford Motor Co.*,
No. 22-cv-08883, 2023 WL 2813510 (C.D. Cal. Apr. 5, 2023) ................................13

*Skulevold v. SD&A Teleservices, Inc.*,
No. 2:20-CV-2771, 2020 WL 7711834 (C.D. Cal. Nov. 18, 2020) ...........................11

*Walden v. Fiore*,
571 U.S. 277 (2014) ..........................................................................................14

*Wolf v. Lyft, Inc.*,
No. 15-cv-1441, 2015 WL 4455965 (N.D. Cal. July 20, 2015)....................................9

*Xavier v. AutoNation, Inc.*,
No. 25-cv-731, 2026 WL 1722900 (C.D. Cal. June 11, 2026) .................................14

*Xu v. Reuters News & Media Inc.*,
No. 24 Civ. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025).......................16

*Yong v. I.N.S.*,
208 F.3d 1116 (9th Cir. 2000)..............................................................................9

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)............................................................................20

**Statutes**

Americans with Disabilities Act and California's Unruh Civil Rights Act .........................18

Cal. Penal Code § 638.50(b) ........................................................................8, 21

Cal. Penal Code § 638.50(c).........................................................................8, 21

Cal. Penal Code § 638.51 ...................................................................7, 10, 18, 19

Cal. Penal Code § 638.51(a) ..........................................................................19

Cal. Penal Code § 638.52(c)...........................................................................19

Cal. Penal Code § 638.52(d) ....................19

Cal. Penal Code § 638.52(g) ....................19

Fed. R. Civ. P. 12....................8

Fed. R. Civ. P. 12(b)(1)....................7

**Other Authorities**

Fed. R. Evid. Rule 201....................20

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

All three factors set forth in *Landis v. North American Company*, 299 U.S. 248 (1936)—(1) orderly course of justice, (2) lack of prejudice, and (3) hardship—point decisively in one direction: a stay of this action is warranted pending resolution of the *Variety Media* appeal. Plaintiff identifies no concrete prejudice from a short pause at the pleading stage. On the other hand, with a decision by the California Court of Appeal looming in *Variety Media*, which involves a CIPA trap and trace claim identical to Plaintiff's lone claim herein, Rokt—and the Court—face the substantial burden of litigating a statutory theory that may soon be eliminated. Proceeding now would risk exactly the inefficiencies *Landis* seeks to avoid: duplicative litigation, inconsistent rulings, and unnecessary expenditure of judicial and party resources regarding a claim with questionable sustained viability amidst pending appellate review.

Even if the Court declines to stay this action, Plaintiff's action remains stalled. Plaintiff has not carried her burden to establish personal jurisdiction, impermissibly relying on only her own conduct and that of third parties in an attempt to establish Rokt's contacts with the forum. Further, Plaintiff's Opposition does not dispel Plaintiff's failure to allege a concrete injury sufficient to confer standing, and only reinforces that her claim rests on the collection of innocuous, unremarkable data in which she does not maintain a legally protectible privacy interest. Finally, because Plaintiff has not stated a claim under CIPA's trap-and-trace provisions, her SAC is ripe for dismissal.

## II. ARGUMENT

### A. A Stay of This Action is Appropriate Pending *Variety Media's* Resolution

#### 1. Plaintiff Mischaracterizes *Variety Media*

A stay is warranted because the pending *Variety Media* appeal will resolve a statutory question central to, and that may entirely dispose of, this case, namely whether California Penal Code § 638.51 applies to routine software processes used in connection

with commercial websites. (*See* ECF No. 24-2 at 15.) Plaintiff attempts to avoid that reality by manufacturing a distinction between the "pen register" theory asserted in *Variety Media* and the "trap and trace" theory asserted here. (Opp. at 11-12.) For purposes of the stay analysis, however, this is a distinction without a difference.

A pen register and a trap and trace device differ only in the direction of captured signaling information, with a pen register capturing *outgoing* dialing or signaling information and a trap and trace device capturing *incoming* dialing or signaling information. *See* Cal. Penal Code §§ 638.50(b)-(c). Both the "pen register" and "trap and trace" theories, however, arise under the *same* statutory provision, depend on the *same* definitional framework in § 638.50, and, as Plaintiff concedes, turn on the *same* antecedent question—whether "a law passed to regulate the use of telephonic pen registers by law enforcement" extends to "routine, ubiquitous software processes implemented by virtually all commercial websites."[1] (Opp. at 12 (citing Rokt's RJN, Ex. 2, *Variety* Writ at 15).)

If the *Variety Media* Court does not extend CIPA's trap and trace provisions to internet-based software processes on commercial websites, Plaintiff's sole claim fails as a matter of law regardless of how she labels the alleged device at issue. Conversely, if the *Variety Media* Court adopts any principles limiting CIPA's reach, those principles will materially shape the Rule 12 analysis here. This is precisely the circumstance in which a stay promotes the orderly administration of justice. *See Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-cv-628, 2020 WL 7625144, at *2 (S.D. Cal. Dec. 21, 2020).

Plaintiff's "indefinite stay" concern misses the mark. (Opp. at 13-14.) The requested stay is not "indefinite," but rather is tethered to a discrete appellate proceeding with a finite endpoint: resolution of the *Variety Media* appeal, the briefing for which will be complete in mid-July 2026, with oral argument on the horizon thereafter. (*See* Pl's RJN, Ex. D, ECF No. 26-5 at 32.) Further, the relevant inquiry is whether the *Variety Media* appeal may

[1] Though the Court may take judicial notice of the underlying filings in the *Variety Media* trial court proceedings (Pl's RJN, Exs. A-C), the operative question relevant to the stay analysis is the issue being presented before the appellate court (Rokt's RJN, Ex. 2)—not those addressed in the trial court.

simplify or dispose of material and relevant issues. Here, it will.

Courts routinely grant stays where a pending decision may resolve a threshold legal issue, notwithstanding the imprecise timing of such decision. *See, e.g.*, *Dominguez v. Sonesta Int'l Hotels Corp.,* 648 F. Supp. 3d 1162, 1174, n.2 (N.D. Cal. 2023) (granting stay pending decision of an appeal where the length of time to resolve the appeal was unknown but not "indefinite," and because of the likelihood that the forthcoming decision "will provide important guidance with respect to how the … claims should be handled"); *Burnell v. Swift Transp. Co.,* No. 10-cv-809, 2011 WL 13352810, at *5 (C.D. Cal. Jan. 20, 2011) (stay pending appellate decision "cannot be said to be 'indefinite'"); *Wolf v. Lyft, Inc.,* No. 15-cv-1441, 2015 WL 4455965, at *2 (N.D. Cal. July 20, 2015).

*Yong v. I.N.S.*, 208 F.3d 1116 (9th Cir. 2000), on which Plaintiff relies, is inapposite. (Opp. at 13-14). *Yong* involved habeas proceedings concerning unique liberty interests and statutory mandates for expedited adjudication—considerations that do not apply in ordinary civil litigation. 208 F.3d at 1118-19 (addressing a "habeas proceeding [which] implicate[s] special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy"). The *Yong* Court was primarily concerned about the interplay between plaintiff's prolonged detention and a potentially open-ended stay. 208 F.3d at 1120 ("we have never authorized, in the interests of judicial economy, an indefinite, potentially lengthy stay in a habeas case"). Here, there are no such similar habeas concerns. Because the requested stay is tethered to a specific, pending appellate proceeding that may be dispositive in nature and limited in duration, the prudent course of action is to pause.[2] *Ramirez,* 2015 WL 6159942 at *2.

*D'Antonio v. Cable News Network, Inc.*, No. 24-cv-3132, 2026 WL 1815527 (S.D.N.Y. June 24, 2026), is instructive. In *D'Antonio*, the Southern District of New York

---

[2] Plaintiff's reliance on *Mt. Hawley Ins. Co. v. Icon West, Inc.* No. 2:23-cv-03905-SVW-MAR, 2023 WL 9419127 (C.D. Cal. Dec. 26, 2023), is also unavailing. In *Icon West*, the defendant sought to stay an insurance coverage action pending adjudication of a state court appeal addressing underlying liability issues. 2023 WL 9419127, at *1. A stay was not imposed because "it [wa]s not clear that resolution of the state court appeal would bear on any issues in th[e] [insurance coverage] case." *Id* at 4. Here, however, resolution of *Variety Media* involves issues identical to this dispute and may dispose of Plaintiff's claim altogether.

granted a stay of a § 638.51 action pending resolution of a Ninth Circuit interlocutory appeal addressing whether transmission of IP addresses and related information constitutes an injury in fact to establish standing, recognizing that a stay would avoid inconsistent rulings and conserve judicial resources. 2026 WL 1815527, at *3 ("it would be an inefficient use of time and resources of the Court and the parties to proceed, given the Ninth Circuit's impending resolution of an issue that has divided district courts and that will ultimately impact the course of this litigation.") (internal quotation marks and citation omitted). The *D'Antonio* Court was not dissuaded from imposing a stay merely given the uncertain timing of adjudication of the related Ninth Circuit proceeding. *Id.* ("although the Court cannot predict the exact date on which the Ninth Circuit will render a decision, this stay would be in effect for a discrete period of time."). The same rationale applies here.

**2. <u>Plaintiff Cannot Show Any Meaningful Prejudice From a Stay</u>**

The second *Landis* factor—whether a stay will cause prejudice to Plaintiff—likewise favors a stay. Plaintiff identifies no concrete harm that would result from waiting for *Variety Media's* forthcoming appellate guidance. Instead, she relies on generalized assertions that she continues to suffer "ongoing harm" because Rokt's alleged conduct has not ceased. (Opp. at 14-15.) Plaintiff's argument fails for two independent reasons.

First, Plaintiff's alleged harm is speculative. Plaintiff does not allege what data was allegedly collected or misused, that she received targeted advertising, that any downstream entity acted on her alleged information, or that she suffered financial, reputational, or any other concrete injury. Rather Plaintiff's "ongoing exploitation" theory rests entirely on the proposition that her data *could* be used in unspecified ways at some point in the future. (Opp. at 14-15.) This is not recognizable prejudice. *See, e.g.*, *Dickinson v. Trump*, 174 F.4th 634, 651-52 (9th Cir. 2026) (de Alba, J., concurring) ("In the context of a stay request, simply showing some possibility of irreparable injury is insufficient … The [non-movant] cannot carry this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record.") (cleaned up); *infra* § II.B.2. A stay does

not exacerbate such speculative harm; it simply prioritizes adjudication of a dispositive legal theory by a court of binding authority that may find there is no harm.

Second, Plaintiff would sustain minimal, if any, prejudice given that the case remains in the pleading stage. *Skulevold v. SD&A Teleservices, Inc.*, No. 2:20-CV-2771, 2020 WL 7711834, at *4 (C.D. Cal. Nov. 18, 2020); *Erceg v. LendingClub Corp.*, 475 F.Supp.3d 1071, 1076 (N.D. Cal. 2020) (modest stay "will result in minimal harm to the parties and will eliminate a potential hardship by not requiring the parties to go forward with premature discovery"). This is particularly salient in the absence of any contentions regarding potential evidence that risks being lost, any witness whose testimony may become unavailable, or any time-sensitive relief that would be undermined by a brief stay. *Johnson v. Starbucks Corp.*, No. 18-CV-06842, 2019 WL 3220273, at *2 (N.D. Cal. Jul. 17, 2019).

Plaintiff's opposition identifies only the ordinary interest in proceeding with litigation without delay. That interest, standing alone, does not outweigh the substantial efficiencies gained and risks avoided that favor a stay here—particularly where the pending appellate proceeding may resolve the only claim in the case.

**3. <u>Rokt Faces Substantial Hardship in Being Forced to Litigate Potentially Moot Issues</u>**

The third *Landis* factor—whether the moving party will suffer hardship or inequity from proceeding—also weighs in favor of a stay. Plaintiff attempts to minimize this factor by characterizing Rokt's burden as nothing more than the ordinary cost of defending a lawsuit. (Opp. at 15.) Plaintiff understates the burdens foisted onto Rokt, and the Court, if this action moves forward pending the outcome of *Variety Media*.

Rokt's hardship would not merely be the expense of litigation, but the burden of "conducting substantial, unrecoverable, and wasteful discovery and pretrial motion practice on matters that could be mooted by a pending appeal" in which "[a]ny determination from the [appellate court], one way or another, will go far in streamlining the case" by "provid[ing] significant guidance for the legal questions presented and will inform the parties' future

litigation and discovery strategies." *Flores v. Bennett*, 675 F.Supp.3d 1052, 1062 (E.D. Cal. 2023) (cleaned up). Courts routinely recognize that this type of inefficiency constitutes a cognizable hardship under *Landis*. *Id.* (collecting cases). The relevant inquiry is not whether litigation entails costs, but whether those costs may be wasted if a pending proceeding resolves or narrows a dispositive legal issue. *See Brinkley v. Monterey Fin. Servs., LLC,* No. 16-cv-1103, 2020 WL 1929023, at *5-6 (S.D. Cal. Apr. 21, 2020) (staying case to avoid "expend[ing] unnecessary time and resources" litigating issues subject to pending decision likely to have "a decisive effect on the viability" of plaintiff's CIPA claim); *Gabriella v. Wells Fargo Fin., Inc.,* No. 06-cv-4347, 2009 WL 188856, at *1 (N.D. Cal. Jan 26, 2009). It would be a waste of party and judicial resources to proceed in litigation involving a single claim whose enduring viability under the circumstances hangs in the balance. For the foregoing reasons, a stay of this action pending the adjudication of *Variety Media* is warranted.

## B. In The Alternative, Plaintiff's Claims Cannot Withstand Dismissal

### 1. Plaintiff Fails to Establish Personal Jurisdiction

Even setting aside the propriety of a stay, Plaintiff's Opposition confirms that the Court lacks personal jurisdiction over Rokt.[3] Plaintiff does not identify any conduct by Rokt purposefully directed at California, nor does she establish that her claim arises out of any forum-related activity. Instead, she relies on generalized allegations about nationwide website accessibility and the conduct of third-party entities—neither of which aids in establishing that the requirements for specific jurisdiction have been met.

#### i. Plaintiff Cannot Rely on Contradicted Allegations

Plaintiff begins with the uncontroversial premise that, at the pleading stage, jurisdictional allegations are accepted as true. (Opp. at 17.) But that principle carries an equally well-established limitation: "the court may not assume the truth of allegations in a pleading which are contradicted by affidavit." *First Capitol Consulting, Inc. v. NetTax, LLC*, Case No. 2:23-cv-07837-MRA-AGR, 2025 WL 1090924, at *1 n.1 (C.D. Cal. Feb. 14, 2025)

[3] In failing to address Rokt's arguments that general jurisdiction is lacking, Plaintiff has conceded to such arguments. *See Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022).

(internal quotation marks and citation omitted). Where, as here, a defendant submits a declaration refuting the factual basis for jurisdiction, the plaintiff must come forward with facts showing jurisdiction is proper and cannot rest on bare allegations. *Selinger v. Ford Motor Co.*, No. 22-cv-08883, 2023 WL 2813510, at *5 (C.D. Cal. Apr. 5, 2023) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). Plaintiff regurgitates the SAC's conclusory allegations that Rokt "committed an intentional act … causing harm that the defendant knows is likely to be suffered in the forum state."[4] (Opp. at 19.) However, Plaintiff does not contest, much less address, the Wagman Declaration, which dispels the existence of sufficient forum contacts to establish personal jurisdiction. This is fatal.

The Wagman Declaration, which stands unrebutted, establishes that there is no nexus between Rokt and Plaintiff or her alleged claim. Rokt (i) does not sell products or services through the Website (or otherwise) to California or any other consumers, (ii) does not operate its Website from California; (iii) does not advertise or otherwise target California consumers via its Website; (iv) does not utilize the IP addresses or other anonymized data of California website visitors; and (v) does not derive financial benefit from Plaintiff's data or that of California visitors to its Website. (Wagman Decl., ¶¶ 6, 12, 14-16, 18, ECF No. 23-3.) Plaintiff does not contest any of this evidence.

Instead, Plaintiff deflects to quintessential red herrings, namely that Rokt maintains a single San Francisco office, the purported "epicenter for artificial intelligence." (Opp. at 18.) Plaintiff's reliance on Rokt's *de minimis* presence in San Francisco, which is entirely divorced from Plaintiff and her claim, is unavailing. (Opp. at 18-19.) Rokt's San Francisco office focuses on a discrete product (Rokt Catalog) that has no connection to Plaintiff or her alleged CIPA claim. (Wagman Decl., ¶ 12, ECF No. 23-3.) Plaintiff is not an e-commerce

[4] On a motion to dismiss, the Court credits well-pleaded allegations only to the extent they are not contradicted by unrebutted competent evidence. But where a defendant submits a declaration refuting Plaintiff's jurisdictional allegations, those allegations need not be accepted as true. *First Capitol Consulting*, 2025 WL 1090924 at *1 n.1. Thus, the fact that Rokt "does not deny that it installed the DBSDKs . . . on its nationwide Website" does not amount to a concession that Plaintiff has satisfied the *Calder* effects test, let alone the veracity of these allegations. *Howse*, 757 F.Supp.3d at1058 n.1. Plaintiff cannot convert the absence of a pleading-stage denial into an admission in the face of unrebutted record evidence to the contrary. *Scanlon v. Curtis Int'l Ltd.*, 465 F.Supp.3d 1054, 1066 (C.D. Cal. 2020).

retailer, did not interact with that business line, and pleads no facts tying her claimed injury to any AI-powered products.[5] (*See generally*, SAC.) Invoking Rokt's tangential California footprint unrelated to Plaintiff's claim does not establish purposeful direction, and it does not supply the missing jurisdictional nexus. *Scanlon*, 465 F.Supp.3d at 1061-62 (rejecting claim that company had a "second headquarters in Los Angeles" based on "several permanent executives" and "hundreds of employees").

**ii. <u>Plaintiff's Theory Improperly Relies on Third-Party Conduct</u>**

To compound problems, Plaintiff doubles down on the SAC's attempt to manufacture the existence of personal jurisdiction over Rokt based on *third-parties'* presence in or relationship to California. (Opp. at 18-19.) This is impermissible. Personal jurisdiction must be based on the *defendant's* own purposeful conduct directed at the forum, not the independent actions of third parties or the unilateral activity of the plaintiff. *See, e.g.*, *Xavier v. AutoNation, Inc.*, No. 25-cv-731, 2026 WL 1722900, at *4 (C.D. Cal. June 11, 2026) ("A defendant does not expressly aim its activities toward the forum state when a defendant's only connection to the forum arises from the unilateral actions of the plaintiff or a third party."); *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between plaintiff (*or third parties*) and the forum state.") (emphasis added); *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. 19-cv-07831, 2019 WL 8064196, at *4 (C.D. Cal. Dec. 5, 2019). Because "Plaintiff did not plausibly allege [Rokt's] installation or use of call-recording technology was directed at California customers, tailored to the California market, or implemented in a California-specific manner," she cannot establish "express aiming." *Xavier*, 2026 WL 1722900 at *4-5.

**iii. <u>Plaintiff Misapplies *Briskin*</u>**

Finally, Plaintiff relies on *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757-58 (9th Cir. 2025), in an attempt to hold Rokt subject to specific personal jurisdiction based merely on

[5] In fact, other than Plaintiff's passing allegation that she visited the Website's homepage on one occasion, the SAC is entirely silent as to any interaction between Plaintiff and Rokt, or any interest Plaintiff had in Rokt.

its nationwide-accessible website. (Opp. at 17-18.) But *Briskin* does not endorse such a simplistic approach and, instead, requires "something more" to impose personal jurisdiction in the online context: additional conduct showing that the defendant expressly aimed its activities at the forum, such as monetizing forum-specific data or otherwise exploiting the forum in a targeted way. *Briskin*, 135 F.4th at 746. Absent "something more," the mere operation of a website accessible nationwide does not support personal jurisdiction. *Id.* at 758 (holding "that an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain") (cleaned up).

Plaintiff does not allege the requisite "something more" in her SAC, and her Opposition only reinforces that reality. Plaintiff does not allege—and the Wagman Declaration affirmatively negates—any sale or monetization of California data, any California-specific targeting, or any forum-directed conduct. *Compare Briskin*, 135 F.4th at 759 ("Shopify knows about its California consumer base, conducts its regular business in California, contacts California residents, interacts with them as an intermediary for its merchants, installs its software onto their devices in California, and continues to track their activities."), *with* ECF No. 23-3 at ¶¶ 13-19. There are no facts suggesting Rokt singled out California users or derived forum-specific benefits from the alleged activity. Without that critical element, Plaintiff's reliance on *Briskin* collapses. *Rounds v. Case-Mate Inc.*, No. 24-cv-08531-WLH, 2025 WL 1873999, at *7 (C.D. Cal. July 2, 2025).

Finally, Plaintiff's passing request for jurisdictional discovery regarding Rokt's purported California client base and purported exploitation of the San Francisco market should be rejected. (Opp. at 21.) None of that information could possibly reveal a nexus between Plaintiff, the forum, and the *underlying controversy between Plaintiff and Rokt* (i.e., specific jurisdiction). Where, as here, Plaintiff tries to establish personal jurisdiction on naked allegations and fails to rebut Rokt's specific evidentiary denials, jurisdictional discovery is not warranted. *Dignity Health v. Blue Cross Blue Shield of Georgia, Inc.*, Case

No. 25-cv-07336-JST, 2026 WL 934194, at *5 (N.D. Cal. Apr. 7, 2026) ("where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery") (cleaned up); *Dadbod Apparel LLC v. Hildawn Design LLC*, No. 2:24-cv-00188 DJC AC, 2024 WL 1886497, at *6 (E.D. Cal. Apr. 30, 2024).

**2. <u>Plaintiff Fails to Establish Article III Standing</u>**

Plaintiff asserts that a violation of CIPA "gives rise to a concrete injury sufficient to confer standing." (Opp. at 23.) However, Plaintiff overstates the law. The Ninth Circuit rejects a "'broad theory' of 'free-roaming privacy right[s,]'" particularly where there are no accompanying factual allegations specific to the plaintiff. *Dawidzik v. Tesla, Inc.*, Case No. EDCV 25-01982-KK-SPx, 2025 WL 3786963, at *3 (C.D. Cal. Dec. 29, 2025) (quoting *Popa v. Microsoft* 153 F.4th 784, 792 (9th Cir. 2025)); *see also Schallert v. Laird Superfood, Inc.*, No. 25-cv-12407, 2026 WL 1707585, at *4 (C.D. Cal. June 5, 2026) (citation omitted) ("Even where a statute creates a cause of action, courts must 'independently decide whether a plaintiff has suffered a concrete harm under Article III.'") (citation omitted).

"Allegations about what [a] website *could* capture, as opposed to what it *did* capture from Plaintiff, are insufficient to confer standing." *Schallert*, 2026 WL 1707585 at *5; *see also Crano v. Sojern, Inc.*, Case No. 3:25-cv-02600-JSC, 2026 WL 1670136, at *4 (N.D. Cal. Jun 9, 2026) ("Plaintiff has not alleged actual injury to herself and instead alleges the trackers have the capability to use these pieces of information … which could then result in targeted advertising and could contribute to defendants' marketing, advertising, and data analytics efforts but Plaintiff does not allege that defendant[] themselves took any such actions [or] that [she was] subject to any such targeted advertising.") (internal quotation marks and citation omitted); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025); *Xu v. Reuters News & Media Inc.*, No. 24 Civ. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025).

Here, Plaintiff's SAC waxes poetic about tracking technologies (SAC ¶¶ 40-53), but

is light on allegations regarding how Plaintiff has been injured. (*See generally,* SAC.) Under these circumstances, Plaintiff has not established standing. *See, e.g.*, *Schallert*, 2026 WL 1707585, at *5 ("Here, while the FAC includes detailed allegations about tracking technologies generally, it includes few specific allegations about Plaintiff's particularized injury … the FAC includes no information about what specifically Plaintiff *did* on Defendant's website or what specific information the website captured *from him* … Because Plaintiff has not done so here, he has not demonstrated any concrete and particularized injury.") (emphasis in original) (internal citations omitted).

Plaintiff's reliance on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), is misplaced. In *Facebook*, the plaintiffs alleged the continuous collection of users' online and offline data (notwithstanding its representation it would not collect the latter), including sensitive data like "employment history and political and religious affiliations." 956 F.3d at 598-99. By contrast, here, Plaintiff does not allege that any offline tracking occurred, that any personally sensitive information was collected, or that her web activity beyond the Website was being collected. (*See generally*, SAC.) In other words, the invasive "cradle to grave" web monitoring at issue in *In re Facebook* is a stranger to this action. Further, *In re Facebook* has waned in significance after *Popa*. *See Dawidzik*, 2025 WL 3786963 at *3-4 (collecting cases in support of *Popa*'s caution that *Facebook* did not "greenlight a per se rule" but was limited to "the individual circumstances").

The additional cases on which Plaintiff relies, involving the widespread collection of an individual's future data as she migrates across the internet, are equally distinguishable. (Opp. at 25 (citing to *Harris v. iHeart Media, Inc.*, No. 25-cv-06038, at *1-2 (N.D. Cal. Jan. 29, 2026) (involving installation and storage of multiple third-party trackers onto users' browsers to "track users 'across the internet'"); *Gilligan v. Experian Data Corp.*, No. 25-cv-02873, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (involving tracking and collection of plaintiffs' web browsing activity tied to their email address and other personal identifiers "across the internet"); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087

(N.D. Cal. 2025) (involving "tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades").)

Finally, Plaintiff cannot sidestep her clear-cut "tester" status, and does not and cannot shy away from the fact that she has filed in excess of *40 near-identical CIPA complaints* over the past two years. (*See* Opp. at 21; Rokt's RJN, Ex. 1.) CIPA was not designed to protect individuals, like Plaintiff, who knowingly and intentionally consent to – and in fact seek to make a "cottage industry" out of – the disclosure of their information. Plaintiff's invocation of *Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023), to substantiate the supposed nobility of her "tester" status, should be given short shrift. (Opp. at 21.) *Langer* involved a civic minded paraplegic tester seeking redress under the Americans with Disabilities Act and California's Unruh Civil Rights Act based on the lack of van-accessible parking at the defendant's place of business to which he visited and intended to return, but was deterred due to lack of public accommodation. 57 F.4th at 1090. To the contrary, CIPA is not intended to protect internet users who knowingly and intentionally volunteer their information to a website and seek to impose liability for capturing that information as part of the routine operation of a website.

### 3. <u>Plaintiff Fails to State a Claim Under CIPA</u>

Even if the Court (i) refrains from staying this action pending the forthcoming decision in *Variety Media*, (ii) finds that Rokt is subject to personal jurisdiction, *and* (iii) determines that Plaintiff has adequately alleged standing, Plaintiff's lone CIPA claim still fails. Plaintiff's claim depends on an expansive reading of § 638.51 that is untethered to the statute's text, structure, and purpose.

#### i. <u>Plaintiff Incorrectly Construes CIPA's Statutory Scheme</u>

Plaintiff's Opposition isolates the definition of a "trap and trace device," and reads it in maximalist fashion divorced from the rest of CIPA's statutory framework. (Opp. at 12, 27.) The Court must construe § 638.51 as part of an integrated statutory scheme, not as a stand-alone definitional clause. When read as a whole, the statute repeatedly ties covered

conduct to devices "attached" to a "telephone line," identifies a "subscriber," and contemplates court-authorized interception of telephonic signaling information.

Rokt does not dispute that the Court begins its statutory analysis "with the statute's words" and "must interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose." *In re A.N.* (2020) 9 Cal.5th 343, 351. However, in reviewing the language of § 638.51, Plaintiff self-servingly reads away the clear reference to "Section 638.52" and "638.53." *See* Cal. Penal Code § 638.51(a) ("[A] person may not install or use a pen register or a trap and trace device without first obtaining a court order *pursuant to Section 638.52 or 638.53.*") (emphasis added). Plaintiff cannot shield her eyes from these cross-references to companion statutory provisions, which by their terms are confined to the use of "telephone line[s]" and "telephone numbers." Cal. Penal Code § 638.52(c),(d), (g).

Thus, the plain language in § 638.51 specifically cabins the regulation and use of pen registers and trap and trace devices to telephone technology, which is undisputably not at issue here. *Scharon v. Paramount Global*, No. 25-cv-10585, 2025 WL 2996812, at *1 (L.A. Sup. Ct. Oct. 3, 2025) ("[Section 638.52] strongly suggests that section 638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers."); *Schallert v. Orkin LLC*, No. 24-cv-31244, 2025 WL 4332757, at *4 (L.A. Sup. Ct. Dec. 15, 2025) ("The use of 'telephone line' in [§ 638.52] sharply narrows the scope of the definition of 'pen register' or 'trap and trace device' in the context of this statute.").

Plaintiff's interpretation—extending the statute to routine website functionality—would improperly sever § 638.51 from those cross-referenced provisions and render them superfluous. *Chinese Theatres, LLC v. Cty. of Los Angeles* (2020) 59 Cal.App.5th 484, 492 (cleaned up) ("Under well-settled rules of statutory construction, courts are required to give meaning to every word of a statute if possible and should avoid a construction making any word surplusage."). Nor does the fact that the statute includes the disjunctive "or" serve to

entirely read out the explicit reference to "Section 638.62 [or] 638.53" and the clear language tying these technologies to telephone numbers, lines, and subscribers—none of which are alleged in the SAC. (Opp. at 29.)

Plaintiff does not attempt to reconcile that structural problem. Instead, Plaintiff assumes the statute can be extended from telephone-surveillance tools to ordinary website activity without identifying any textual or historical basis for that expansion. But the legislative materials that Plaintiff chooses to ignore confirm that the statute was enacted to regulate law enforcement's use of pen registers and trap and trace devices that track incoming and outgoing telephone numbers—not browser-level interactions on commercial websites.[6] (*See* ECF No. 24-4 at 10-11; ECF No. 24-5 at 9 (addressing "orders for pen registers/trap and trace devices used in telephone surveillance").) Plaintiff's contrary reading is not an interpretation of the statute; it is a rewriting of it.

**ii. <u>The SAC Still Fails to Plead a Qualifying "Communication"</u>**

For purposes of CIPA, a "communication" includes more than mere "record information regarding the characteristics of the message that is generated in the course of the communication such as a name, address, or the identity of a person making a communication." *See, e.g.*, *Facebook*, 140 F. Supp. 3d at 935 (citation omitted). This type of "record information" within a communication refers to "non-content information that is generated in the course of a communication" the collection of which does not implicate CIPA. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). However, neither in the SAC nor her Opposition does Plaintiff allege the existence of any actual "communication" where information is captured beyond automated device-to-server exchanges through Plaintiff's IP address. This is insufficient to establish a "communication" has been captured such that its source is identified as required under § 638.50. Rather,

[6] Plaintiff's contention that CIPA's legislative history constitutes "legislative fact[s]" that are "outside the scope of Fed. R. Evid. Rule 201" should be given short shrift. (Opp. at 28.) Courts are free to consult legislative facts to the extent they find them useful. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 811 F. App'x 421, 422 (9th Cir. 2020) ("Since the associated exhibits contain only legislative facts, we are free to consult them to the extent we find them useful."). Accordingly, this Court may consult CIPA's legislative history in its interpretative analysis.

the Opposition equates passive webpage loading with a regulated communication, a premise courts have rejected. The SAC itself alleges only automated exchanges between a browser and a server during a single, passive visit. (SAC ¶¶ 54-58; *see also* Opp. at 27.) The data at issue—IP address, and browser characteristics—is routine routing information inherent in any internet request, not a "communication" within the meaning of the statute.

**iii. <u>Plaintiff's Theory Is Internally Inconsistent and Implausible</u>**

Finally, the Opposition sharpens a central contradiction in Plaintiff's theory. To invoke the trap and trace statute, Plaintiff must disclaim any collection of "content" and, instead, rely solely on routing or signaling information. However, here, Plaintiff alleges that Rokt's technology enables profiling, behavioral tracking, and analysis of user activity, or content that eclipses the scope of CIPA's trap and trace provisions. (Opp. at 27-29; SAC ¶¶ 36, 43, 45.) By definition, trap and trace devices capture only limited addressing or routing information—not the substance or meaning of user activity. *See* Cal. Penal Code §§ 638.50(b)-(c). But the capabilities Plaintiff alleges—tracking habits, analyzing behavior, building profiles—necessarily require information beyond mere "record" information. Courts confronting this contradiction have rejected similar claims, recognizing that a plaintiff cannot simultaneously plead a content-free theory to fit within the statute and a content-driven theory to establish harm. *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025); *Rodriguez v. IMDB.com, Inc.*, No. 24-cv-14922, 2026 WL 886927, at *3 (L.A. Sup. Ct. Mar. 24, 2026).

## III. <u>CONCLUSION</u>

For the foregoing reasons, Rokt respectfully requests that the Court stay the action or, in the alternative, dismiss the SAC in its entirety with prejudice.

Dated: July 6, 2026

COZEN O'CONNOR

By: */s/ Matthew E. Lewitz*
Matthew E. Lewitz
*Attorneys for Specially Appearing Defendant Rokt US Corp.*